## Biederman v. Brown.

1. *Master and Servant—Master's Liability for Acts of the Servant.*— An accident resulting in personal injuries was due to the improper management of persons operating an aerial railway, who were in the employ of the proprietor, but for an entirely different purpose—that of running a steamer as pilot and engineer, and had no authority or right to operate the railway. It appeared that the injured party wanted to ride, but was told that the railway was not running that day. He insisted on taking a ride, and the engineer said he guessed that they could run it; so they tied up the steamer and made the attempt, resulting in the accident in question. *It was held,* that no authority in the engineer and pilot to leave the steamer and undertake the operating of the railway, could be fairly implied from the nature of their employment.

2. *Instructions—Error in Giving—When Not Material.*—When an erroneous instruction has been given, but the Appellate Court is satisfied that the result of the suit was not affected by it, and the jury was not misled, the error is not material.

3. *New Trials—Newly Discovered Evidence.*—When the newly discovered evidence relied upon in support of a motion for a new trial is cumulative and not conclusive, it will not furnish ground for a new trial.

**Memorandum.**—Action for personal injuries. Appeal from the Circuit Court of Knox County; the Hon. Arthur A. Smith, Judge, presiding. Heard in this court at the May term, 1893, and affirmed. Opinion filed December 12, 1893.

The statement of facts is contained in the opinion of the court.

A. M. Brown and F. F. Cooke, attorneys for appellant.

Appellee's Brief, G. W. Thompson, E. P. Williams and M. J. Dougherty, Attorneys.

When a master's directions to a servant are specific, and the servant goes outside of his directions, and is not acting within the scope of his authority, the master is not liable for the result of unauthorized acts of servant. Oxford v. Peter, 28 Ill. 434; Tuller v. Vogt, 13 Ill. 277; Wilson v. Peverly, 2 N. H. 548; Haack v. Fearing, 5 Robertson, 528; Stone v. Hills, 45 Conn. 44; Shearman and Redfield on Negligence, Sec. 62, 63; Woods' Master and Servant, Sec. 28, page 548; McKenzie v. McLeod, 10 Bingham, 385; Mitchell v. Crassweller, 13 Com. B. 247.

No presumption of authority arises from an act being done for the master's benefit. Redfield on Negligence, Sec. 62; Church v. Mansfield, 20 Conn. 284.

" A new trial will not be granted on the ground of newly discovered evidence where such evidence is merely cumulative, and is not conclusive in its character." Abrahams v. Weiller, 87 Ill. 179; Laird v. Warren, 92 Ill. 204; McKenzie v. Remington, 79 Ill. 488; Spahn v. People, 137 Ill. 545.

Opinion of the Court, Cartwright, P. J.

This is a suit brought by appellant against appellee, to recover damages on account of personal injuries received in the falling of an aerial railway on which appellant was riding, and which was owned and maintained by appellee at a public resort near Galesburg, for the entertainment of patrons of the resort.

The grounds of liability charged in the declaration, were

the alleged defective construction of the railway with weak and insufficient materials, and furnishing incompetent and unskillful servants to operate the same. Upon a trial in the Circuit Court the appellant was defeated.

The resort in question was shown to have been advertised and maintained by the defendant, for the pleasure and amusement of the public. There was a lake, upon which there was a steamer, and there were also a natatorium, toboggan slide, picnic grounds and this aerial railway. Charges were made for the use of each device or accommodation furnished. On July 7, 1890, the plaintiff, together with Mr. Cooke, mayor of the city of Galesburg, Mr. Leach, an attorney, Mr. Heline, a train dispatcher, and other passengers, were at the resort, which was called Lake George Park, and boarded the steamer for a ride on the lake. The steamer came to a landing near the aerial railway, and the passengers, together with the engineer and pilot of the steamer, went to the railway. This aerial railway, as it was called, consisted of four wire cables 380 feet long, suspended across a ravine, and a basket containing two chairs was hung upon the cables with wheels, upon which it ran back and forth. There was a post at each end. The cables were fastened to one post, and at the other end were fastened to a ring attached to an iron hook, which was connected with the post by a device which enabled the operator to raise and lower it on the post. The raising and lowering was done by means of a "crab" or windlass, with a cog wheel arrangement. The railway was operated by raising and lowering the end at the hook. It could be raised nine feet higher than the other end, so that the basket would run down the incline to the other end. The end at the hook was then let down nine feet lower than the end where the basket would be, and the basket would run back. On this occasion, Mr. Cooke and Mr. Leach first got into the basket, and the engineer and the pilot undertook the operation of the railway. The basket was sent across to the other side, but on the return it stopped in the middle. This was probably due to letting the end at the hook down too slowly, so that the basket did

not acquire enough momentum to carry it over the natural sag in the cables. The basket was gotten back to the starting point and Cooke got out, and the plaintiff got into the basket. It was sent across as before, and again stopped on the return. The engineer and pilot and George Cowan then got on the wire, and moved it up and down. This necessarily produced a jerking, and the hook straightened out, allowing the cables with the basket to fall a distance of eighteen or twenty feet. The plaintiff was seriously injured in the fall.

It is urged that defendant was guilty of negligence in the construction of the railway, but, in our opinion, the evidence would not have justified that conclusion. The hook was proven to have been capable of sustaining many times the weight that was properly on it at the time of the accident, and there was no reason, apparent, for any precaution not taken. No accident would be anticipated under proper management. It would have sustained much more weight than the men who were on the wire, in addition to the wire and carriage and passengers, but for the efforts to move the wire up and down, to start the basket. It seems to have been the jerking of the cables produced by such motion that caused it to break, or straighten out. This was due to improper management of the persons operating the railway. Upon the question of liability of the defendant for such mismanagement, it is contended, on the one hand, that the engineer and pilot of the steamer were clothed, by the defendant, with such real or apparent authority to perform that service in his behalf, as to render him liable, and on the other hand, that no such authority was given. The evidence on the part of the plaintiff bearing on this point was, that the parties expressed a wish to ride, and the engineer and pilot left the steamer and went to the railway and undertook its operation, and one of them received the pay, which was offered back immediately after the accident. One witness testified that the same parties had operated it before, when he rode on it. The evidence for defendant was that the railway was only operated when there were crowds at the park, on special occasions, and then by an-

Biederman v. Brown.

other employe of defendant, who had charge of it; that the engineer and pilot were hired solely to run the steamer, and had no right or authority to run the railway, and that they had not operated it previously.  The testimony of the engineer and pilot concerning their attempt to run it was that when the parties wanted to ride, they were told that it was not running that day, but they insisted on taking a ride, and plaintiff said that when they came out there they generally took in everything; that the engineer then said that he guessed they could run it, and they tied up the steamer and went up and made the attempt.

It seems to us that no authority in the engineer and pilot to leave the steamer, and undertake the operation of the railway, could be fairly implied from the nature of their employment, and certainly none was expressly conferred. The jury were justified in finding that they had no such authority, and the circumstances were not such as to lead the parties to believe that they were performing a duty incident to their employment, which was apparently that of engineer and pilot of the steamer.

The ninth instruction, given at the instance of the defendant, was objectionable in limiting the authority of the engineer and pilot to doing that for which they had received specific directions from the defendant, but we are satisfied that the result of the suit was not affected by the instruction, and that the jury was not misled.  Other objections are made to instructions, which are not tenable.

It is contended that the court excluded proper evidence on the part of plaintiff, touching the advertisement of the park as a public resort; but the fact that the park was kept for that purpose, and that the public were invited there and charged for entertainment, was not in dispute, and was sufficiently proven otherwise.  The error, if it was an error, was harmless.

An affidavit of newly discovered evidence was filed in support of the motion for a new trial, but the evidence was cumulative and not conclusive, and therefore did not furnish ground for a new trial.

The judgment will be affirmed.